UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| SENS MECHANICAL, INC., | * | Case No. 17-20880 |
| | | Chapter 7 |
| Debtor. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**FIRST AND FINAL APPLICATION OF SPECIAL LITIGATION COUNSEL TO CHAPTER 7 TRUSTEE SEEKING ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

Crowley, Hoge & Fein, P.C. ("CHF") and Henderson Law, LLC ("HL") (CHF and HL, collectively, the "Applicants"), special litigation counsel to Monique D. Almy, the Chapter 7 trustee for the bankruptcy estate of Sens Mechanical, Inc. (the "Debtor" or "Estate" or "SMI"), file this *First and Final Application Seeking Allowance of Compensation and Reimbursement of Expenses* (the "Fee Application"), pursuant to 11 U.S.C. §§ 327, 328, 330 and 331 and Fed. R. Bankr. P. 2016, whereby the Applicants seek approval of discounted compensation in the amount of $283,333.34 and reimbursement of out-of-pocket expenses in the amount of $3,103.46[1] for the period July 28, 2020, through May 30, 2025 (the "Application Period"), as well as reimbursement of one-half of other litigation expenses paid by Roy Sens ($64,983.71) and one-half of outstanding vendor (court reporters and experts) invoices ($30,443.79), further detailed below.

**I.      JURISDICTION**

1.      This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue in this Court is proper pursuant to 28 U.S.C. § 1409.  The Application is a core proceeding within the meaning of 28 U.S.C. § 157.

---

[1]The expenses sought by the Applicants represent one-half of the total amount of such expenses ($6,206.91), as the other one-half will be reimbursed by the non-debtor client, Sens, Inc.

## II.   BACKGROUND

2. On August 11, 2017 (the "<u>Petition Date</u>"), the Debtor voluntarily filed for relief under Chapter 11 of the Bankruptcy Code.

3. On November 21, 2017, this case was converted to one under Chapter 7 of the Bankruptcy Code. Monique D. Almy was subsequently appointed as Chapter 7 trustee for the Estate by the United States Trustee for Region Four (the "<u>Trustee</u>"). The case was closed on August 14, 2019.

4. On June 2, 2020, upon motion by the Debtor, the Court ordered that this proceeding be reopened; Ms. Almy subsequently was reappointed as Chapter 7 trustee for the Estate. (*See* <u>Doc. 123</u>).

5. The case was reopened for the Trustee to pursue the Estate's portion of legal malpractice claims against Attorney Thomas C. Beach, III, and the law firm of Whiteford, Taylor & Preston LLP (the "<u>Defendants</u>"), in connection with their representation of the Debtor in a contract dispute. In February 2020, a lawsuit was filed in the Circuit Court for Howard County, styled as *Sens, Inc., et al. v. Whiteford, Taylor & Preston, LLP, et al.*, Case No. C-13-CV-20-000231 (the "<u>Action</u>"). Defendants filed a Notice of Removal to the U.S. Bankruptcy Court for the District of Maryland on May 8, 2020. On July 28, 2020, the Trustee, on behalf of the Estate, joined the Action as one of two plaintiffs.[2]

6. On July 28, 2020, the Trustee filed that certain *Application for Entry of an Order Authorizing the Employment and Retention of Special Litigation Counsel* (<u>Doc. 126</u>) (the "<u>Employment Application</u>"), which the Court approved (<u>Doc. 128</u>) (the "<u>Employment Order</u>"), explicitly ordering "that the contingency fee arrangement set forth in the Application and Exhibit

---

[2] A non-bankrupt entity, Sens, Inc., also represented by CHF and HL, is the other plaintiff in the Action.

A thereto (Engagement Agreement) is APPROVED." The approved Engagement Agreement provides for the Applicants, collectively, to receive one-third (1/3) of all amounts recovered in the Action, *prior to* deduction of any costs or expenses.

7.  Since their retention, the Applicants have vigorously prosecuted the Action on behalf of the Trustee to recover and liquidate assets of the Estate. The Applicants have not submitted any prior application for payment of fees and costs with respect to the Estate and have not received any interim payment of fees or expenses from the Debtor or Trustee.

### III.   PROFESSIONAL SERVICES RENDERED DURING APPLICATION PERIOD

8.  During the Application Period, the Applicants have rendered professional services to the Trustee in connection with the Action. The services are explained in further detail below. Also, attached hereto as Exhibit A are the time entries of the Applicants' professionals memorializing their services during the Application Period.

**A.**   *Professional Services:*

9.  As reflected in the Applicants' billing statements (Exhibit A), the Applicants' work for the Trustee related to the prosecution and settlement of the Action.

10.  The Applicants, on behalf of the Trustee, litigated the Action through extensive discovery, including documents requests, interrogatories, and several depositions of fact and expert witnesses.

11.  The Applicants also spent significant time preparing for trial, including participation in a court-ordered mediation. After many hours of mediation over multiple days, the Applicants negotiated a settlement with the Defendants for the total payment of $2,000,000.00, which settlement is pending the Court's approval. This payment is to be split as follows: One Million Dollars ($1,000,000) to Monique Almy, as the Chapter 7 Trustee ("Estate Share"), and

One Million Dollars ($1,000,000) to Sens, Inc. ("Sens Share"), the other plaintiff in the Action and not in bankruptcy. Thus, the fees sought from the Estate Share shall be one-half of the total reduced fees.

B. *Professionals Providing Services:*

12. The Engagement Agreement provides that the Applicants receive one-third (1/3) of all amounts recovered in the Action, prior to deduction of any costs or expenses, which equals $666,666.67; *however*, the Applicants have agreed to reduce their contingency fee by $100,000.00, leaving a final payment due of $566,666.67.[3] The Estate's one-half share of the reduced amount owed is $283,333.34.

13. Despite the contingency payment due, as required by the Bankruptcy Code, the Applicants provide the following names and positions of professionals who worked on the Action during the Application Period, along with a summary of the hours spent by each such professional, his or her hourly rate, and the resulting fees. Further detail is provided in the time records attached hereto as Exhibit A.[4]

| Name | Position | Hours | Hourly Rate | Fees Earned |
|---|---|---|---|---|
| Christopher Hoge, Esquire | Principal at CHF | 415.7 | $400 | $166,280.00 |
| Wes Henderson, Esquire | Member at HL | 287.4 | $300 -- $400 | $105,340.00 |
| Patrick D. Gardiner, Esquire | Associate at HL | 262.3 | $250 -- $300 | $66,675.00 |

---

[3] The Applicants will split this amount equally.

[4] It is important to note that CHF and HL were employed by Sens, Inc. (a co-Plaintiff) prior to this Court's approval of their representation of the Trustee on behalf of SMI. The fees associated with the work performed prior to July 28, 2020, for which the Debtor would ultimately have benefitted, totals $170,446.25. It is also worth noting that there were many meetings attended by all counsel, but for which not all counsel billed their time.

| Shannen Osborne | Paralegal at HL | .2 | $100 | $20.00 |
| Elena Iuga, Esquire | Former Associate at CHF | 132.0 | $250 | $33,000.00 |
| Gheorghe Campeanu | Former Paralegal at CHF | 31.0 | $100 | $3,100.00 |
| Rebecca Deucher, Esquire | Former Associate at CHF | 41.3 | $250 | $10,325.00 |
| **TOTAL** | | **1,169.9** | | **$384,740.00** |

C.   *Disbursements Made:*

14.   The disbursements made by the Applicants during the Application Period are as follows:

| **LAW FIRM** | ***EXPENSES -- APPLICATION PERIOD*** |
|---|---|
| CHF | $3,030.37 |
| HL | $73.09 |
| **TOTAL** | **$3,103.46** |

An itemized listing of the foregoing disbursements during the Application Period is attached hereto as part of Exhibit B.

15.   In addition to the Applicants' expenses, Roy Sens advanced litigation expenses totaling $129,967.41 (the "Roy Sens Expenses"). *See* Exhibit B. While some of these expenses pre-dated the Application Period, they advanced the litigation and were for items that were directly utilized in the Action, such as payment of expert fees. This Fee Application proposes to reimburse one-half of the Roy Sens Expenses, or $64,983.71, from the Estate Share; the other half will be paid from the Sens Share.

5

16.     In addition, there are other unpaid litigation expenses totaling $60,887.58 (the "Vendor Expenses"). *See* Exhibit B. All these expenses are comprised of court reporter and expert fees, post-dated the commencement of the Application Period and are related to the Action. This Fee Application proposes to reimburse one-half of the Vendor Expenses, or $30,443.79, from the Estate Share; the other half will be paid from the Sens Share.

### IV.    ANALYSIS

17.     Under § 328(a) of the Bankruptcy Code,

> [t]he trustee …, with the court's approval, may employ or authorize the employment of a professional person … on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

18.     A contingency fee that is "pre-approved" by a court will only be reversed if the fee arrangement is deemed "improvident." *See Peele v. Cunningham (In re Texas Sec. Inc.)*, 218 F.3d 443, 445-46 (5th Cir. 2000); *see also In re Airspect Air Inc.*, 385 F.3d 915, 920 (6th Cir. 2004) (Section "328 applies when the bankruptcy court approves a particular rate or means of payment, and § 330 applies when the court does not do so."); *Friedman Enter. v. B.U.M. Int'l Inc. (In re B.U.M. Int'l Inc.)*, 229 F.3d 824, 829 (9th Cir. 2000) ("[N]o question that a bankruptcy court may not conduct a § 330 inquiry into the reasonableness of the fees and their benefit to the estate if the court has already approved the professional's employment under 11 U.S.C. § 328.").

19.     The Trustee's Employment Application was brought under Section 328(a) of the Bankruptcy Code, among other sections (*see* Doc. 126), and the Employment Order explicitly approved "the contingency fee arrangement set forth in the Application and Exhibit A thereto

6

(Engagement Agreement)" (*see* Doc. 128). Consequently, this Fee Application should be approved under Section 328(a) of the Bankruptcy Code. *See In re Merry-Go-Round Enter. Inc.*, 244 B.R. 327, 345 (Bankr. D. Md. 2000) (finding "pre-approved" 40% contingency fee arrangement reasonable under Section 328(a)).

20. Because Appendix D to this Court's Local Rules, entitled *Compensation Guidelines for Professionals in the United States Bankruptcy Court for the District of Maryland* (the "Guidelines"), applies to professionals seeking compensation under Section 328, a lodestar analysis is discussed below.

21. Courts look to the "lodestar" formula in assessing attorneys' fees. Under this approach, courts consider the number of hours of service reasonably devoted to the case multiplied by the attorneys' reasonable rates. This sum may be adjusted to reflect the characteristics of the particular case and the reputation of the attorney. *See, e.g., Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 361 (D.D.C. 1983), *aff'd in part, rev'd in part*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985).

22. Many courts frequently consider the specific lodestar factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and applied to bankruptcy cases in *In re First Colonial Corp. of America*, 544 F.2d 1291, 1298-99 (5th Cir.), *cert. denied*, 431 U.S. 904 (1977). These tests were later adopted by the Fourth Circuit in *Barber v. Kimbrells, Inc.*, 577 F.2d 216, 226 (4th Cir.), *cert. denied*, 439 U.S. 934 (1978), and in *Anderson v. Morris*, 658 F.2d 246, 249 (4th Cir. 1981), where the Fourth Circuit directed the lower district court to consider the lodestar approach utilized in *Johnson*, and which is specifically referenced in the Guidelines.

23. In *Harman v. Levin*, 772 F.2d 1150 (4th Cir. 1985), the Fourth Circuit applied the twelve *Johnson* factors in determining an award of attorneys' fees. Following *Harman*, the

Applicants set forth each of the *Johnson* guidelines in connection with the allowance of compensation sought herein:

    a.    <u>Time and Labor Expended</u>:

The Applicants have rendered services to the Estate at the request of the Trustee. Those services are described in Section III above and in the billing records attached as <u>Exhibit A</u>.

    b.    <u>Novelty and Difficulty of Questions Raised</u>:

The legal malpractice claim at issue presented novel and complex questions of law and fact, particularly as it arose from legal advice provided in the context of a sophisticated commercial construction project involving the development of a hotel. The matter required a nuanced understanding of construction law, bonding of construction projects, and the interplay between professional duties and industry-specific contractual obligations. The claim involved evaluating the standard of care applicable to legal counsel advising on construction specific issues – alleged defaults, liquidated damages, a surety claim -- areas that are highly specialized and fact-intensive. Additionally, the case raised difficult causation and damages issues, including the extent to which alleged legal malpractice caused financial damages. These challenges were compounded by the need to analyze and present expert testimony on the legal standard of care and complex damage issues. The complexity of these issues demanded significant legal skill and judgment, justifying the time and resources expended in pursuing the claim.

    c.    <u>Level of Skill Required</u>:

The prosecution of this legal malpractice claim demanded a high degree of legal skill, experience, and strategic judgment. The underlying matter involved complex issues of professional negligence arising from legal advice provided in the context of a commercial hotel construction project -- an area that intersects multiple sophisticated legal disciplines, including

construction law, surety law, contract law, and professional responsibility. Counsel were required to assess and litigate nuanced questions regarding the standard of care applicable to attorneys advising on construction-related legal matters, including liquidated damages, a bond claim, and risks under a modified AIA contract. This necessitated not only a deep understanding of the substantive law but also the ability to work effectively with experts to establish a breach in the standard of care, causation and damages -- elements that can be notoriously difficult to prove in malpractice actions. Moreover, the case involved navigating procedural complexities within the bankruptcy context, including coordination with the Trustee and ensuring that the interests of the Estate and its creditors were properly considered. The contingency fee arrangement further underscores the level of commitment and risk undertaken by counsel, who advanced significant time and resources without any guarantee of recovery.

      d.     <u>Opportunity Costs:</u>

Opportunity costs were not a consideration.

      e.     <u>Customary Fee:</u>

The hourly rates for the individual professionals of the Applicants working on the Action are the normal and customary rates charged by the Applicants for services to clients in other civil litigation cases in the Baltimore-Washington area. The hourly rates are within the customary range charged by other attorneys in the Baltimore-Washington area, and the total compensation sought is reasonable compared with fees charged by other similarly situated law firms in contingency cases such as the Action. The Applicants are entitled to a total contingency fee of $666,666.67, but they have exercised their billing discretion to reduce that amount by $100,000.00; consequently, the Applicants seek only to be paid from the *reduced* amount of <u>$283,333.34</u> (representing one-half of the reduced fees to be paid from the $1 million Estate Share). The

Applicants will seek recovery of the difference, *i.e.*, $283,333.33, from the Sens Share, for a total fee of $566,666.67.

      f.      <u>Whether Fee is Fixed or Contingent:</u>

At the initiation of their engagement, the Applicants' contingency-fee arrangement with the Trustee was approved by the Court.

      g.      <u>Time Limitation Imposed by the Circumstances:</u>

This is not a factor in this case.

      h.      <u>Amount in Controversy and Results Obtained:</u>

With the Applicants' assistance, the Trustee liquidated the Debtor's malpractice claim in the Action. The results obtained were the best possible results in a reasonable period of time. As detailed above, the Trustee, with the Applicants' representation, recovered the gross amount of <u>$2 million</u>.

      i.      <u>Experience, Reputation and Ability of Counsel:</u>

The Applicants believe that their attorneys are highly qualified in the field in which they practice and command the fees which they charge. To that end, the Applicants' practices include complex civil litigation, such as the Action.

      j.      <u>The Undesirability of the Case:</u>

This case was not undesirable in relation to other representations.

      k.      <u>Professional Relationship with the Client:</u>

None.

      l.      <u>Awards in Similar Cases:</u>

The fees requested by the Applicants are comparable to or lower than fees allowed in contingency cases of similar size and complexity.

DCACTIVE-80155004.1

24. All legal services for which compensation is requested in this Fee Application were performed for and on behalf of the Trustee and other plaintiff in the Action.

25. No agreement or understanding exists between the Applicants and any other person for the sharing of compensation to be received by them for services rendered in connection with the Action.  No agreement or understanding exists between the Applicants and any other person rendering services in connection with the Action for the sharing of compensation of such other person.

26. <u>As detailed above, the Applicants have exercised their billing judgment in reducing the requested fees by $100,000.00.</u>

27. Notice of this Fee Application has been given to the United States Trustee, and all parties in interest who are listed on the matrix and who have entered their appearance in this case.

28. This Fee Application was submitted to the United States Trustee for review in advance of filing, and the United States Trustee has authorized its filing as a first and final application with all rights applicable thereto.

29. The Trustee has also reviewed the fees requested in this Fee Application and finds them to be acceptable.

WHEREFORE, the Applicants respectfully request the following relief:

A. That Crowley, Hoge & Fein, P.C. and Henderson Law, LLC be awarded final compensation and reimbursement of expenses in the total amount of <u>$286,436.80</u> (comprised of $283,333.34 in fees and $3,103.46 in expenses), representing the reduced fees and disbursements sought in this Fee Application from the $1 million Estate Share;

B. That Crowley, Hoge & Fein, P.C. and Henderson Law, LLC be authorized to withdraw from escrow the sum of <u>$286,436.80</u>, representing the reduced fees and disbursements sought in this Fee Application from the $1 million Estate Share;

C. That Henderson Law, LLC shall remit from the Estate Share the sum of <u>$64,983.71</u> to Roy Sens, which represents reimbursement of one-half of the Roy Sens Expenses;

D.  That Henderson Law, LLC shall remit from the Estate Share the sum of $30,443.79 to the vendors identified on Exhibit B, which represents reimbursement of one-half of the Vendor Expenses; and

E.  That Crowley, Hoge & Fein, P.C. and Henderson Law, LLC be granted such other and further relief as is just and appropriate.

Respectfully submitted,

*/s/ Christopher G. Hoge*
Christopher G. Hoge
Crowley, Hoge & Fein, P.C.
1211 Connecticut Avenue, NW, Suite 300
Washington, DC 20036
*Co-Special Counsel for Chapter 7 Trustee*

*/s/ Wes P. Henderson*
Wes P. Henderson
Henderson Law, LLC
2127 Espey Court, Suite 204
Crofton, MD 21114
*Co-Special Counsel for Chapter 7 Trustee*

*/s/ Monique D. Almy*
Monique D. Almy (Bar No. 04479)
Randall L. Hagen (Bar No. 08099)
Crowell & Morning, LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 624-2712 (telephone)
*Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 3, 2025, I reviewed the Court's CM/ECF system and it reports that an electronic copy of the foregoing *First and Final Application of Special Litigation Counsel to Chapter 7 Trustee Seeking Allowance of Compensation and Reimbursement of Expenses*, together with exhibits and proposed Order, will be served electronically by the Court's CM/ECF system on the following:

Monique D. Almy
Michael E. Crowson
Augustus T. Curtis
Alan M. Grochal
Michael J. Klima
Eric G. Korphage

       Marissa K. Lilja
       Patrick Michael Pike
       Daniel M. Press
       David Sommer
       U.S. Trustee – Baltimore
       Gerard R. Vetter

    I HEREBY FURTHER CERTIFY that on July 3, 2025, a copy of the foregoing *First and Final Application of Special Litigation Counsel to Chapter 7 Trustee Seeking Allowance of Compensation and Reimbursement of Expenses*, together with exhibits and proposed Order, was served via U.S. First Class mail, postage prepaid, on:

       Sens Mechanical, Inc.
       10135 Pin Oak Drive
       Berlin, MD  21811

       Ford Motor Credit Company, LLC, c/o AIS Portfolio Services, LLC
       4515 N Santa Fe Ave. Dept. APS
       Oklahoma City, OK 73118

       Office of the U.S. Trustee
       101 W. Lombard Street, Suite 2625
       Baltimore, MD 21201

              */s/ Randall L. Hagen*
              Randall L. Hagen