**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

In re:                                          *

SENS MECHANICAL, INC.,              *          Case No. 17-20880
                                                               Chapter 7
                    Debtor.                    *

*     *     *     *     *     *     *     *     *     *     *     *     *

**SECOND AND FINAL APPLICATION OF CROWELL & MORING LLP, AS**
**COUNSEL TO THE CHAPTER 7 TRUSTEE, SEEKING ALLOWANCE OF**
**COMPENSATION AND REIMBURSEMENT OF EXPENSES**

Crowell & Moring LLP ("Applicant" or "C&M"), counsel to Monique D. Almy, Chapter 7 trustee for the bankruptcy estate of Sens Mechanical, Inc. ("Debtor" or "Estate"), files this *Second and Final Application Seeking Allowance of Compensation and Reimbursement of Expenses* ("Second Application"), pursuant to 11 U.S.C. §§ 327, 330 and 331 and Fed. R. Bankr. P. 2016, whereby C&M seeks approval of compensation and reimbursement of expenses in the total amount of $171,313.40 for the period April 9, 2020 through October 8, 2025 ("Second Application Period").

## I.     JURISDICTION

1.     This Court has jurisdiction over the Second Application pursuant to 28 U.S.C. §§ 157 and 1334.  Venue in this Court is proper pursuant to 28 U.S.C. § 1409.  The Second Application is a core proceeding within the meaning of 28 U.S.C. § 157.

## II.     BACKGROUND

2.     On August 11, 2017 ("Petition Date"), the Debtor voluntarily filed for relief under Chapter 11 of the Bankruptcy Code.  This case was converted to one under Chapter 7 on November 21, 2017.  Monique D. Almy was subsequently appointed as the Chapter 7 trustee for the Estate by the United States Trustee for Region Four.

3.      On March 7, 2018, the Trustee filed her *Application to Employ Counsel, Crowell & Moring LLP*, effective as of November 27, 2017 (*see* <u>Doc. 79</u>), which the Court approved on April 2, 2018 ("<u>Employment Order</u>") (*see* <u>Doc. 81</u>).

4.      C&M's initial work on behalf of the Trustee related to the recovery and liquidation of assets of the Estate, specifically, seeking authority to sell certain hard assets of the Debtor (*see* <u>Doc. 85</u>), which the Court approved (*see* <u>Doc. 87</u>).

5.      On October 30, 2018, C&M filed its *First and Final Application for Compensation of Fees ($21,784.00) and Reimbursement of Expenses ($58.41)* incurred for the period November 27, 2017, through August 31, 2018 ("<u>First Application</u>") (*see* <u>Doc. 96</u>).   By Order entered on November 29, 2018, the Court approved and allowed the amounts sought in the First Application (*see* <u>Doc. 97</u>).   The First Application was entitled "first and final" because the Trustee then believed that the Estate had been fully administered.

6.      After the Trustee filed her Final Report, the Final Decree was entered and the case closed on August 14, 2019 (*see* <u>Doc. 118</u>).

7.      On March 29, 2020, the Debtor filed its *Motion to Reopen Chapter 7 Case* (<u>Doc. 119</u>), along with its Amended Schedules A/B (<u>Doc. 120</u>), which reflected that the Estate had an interest in a portion of legal malpractice claims against Attorney Thomas C. Beach, III, and the law firm of Whiteford, Taylor & Preston LLP (the "<u>Defendants</u>"), in connection with their representation of the Debtor and a related entity in a contract dispute.   Specifically, in February 2020, a lawsuit was filed in the Circuit Court for Howard County, styled as *Sens, Inc., et al. v. Whiteford, Taylor & Preston, LLP, et al.*, Case No. C-13-CV-20-000231 (the "<u>Action</u>"); the plaintiffs were represented in the Action by Crowley, Hoge & Fein, P.C. ("<u>CHF</u>") and Henderson Law, LLC ("<u>HL</u>") (CHF and HL, collectively, "<u>Special Litigation Counsel</u>").   Defendants filed a

2

Notice of Removal to the U.S. Bankruptcy Court for the District of Maryland on May 8, 2020, and the Action was then designated as Adversary Proceeding No. 20-10049.

8.      On June 2, 2020, the Court ordered that this proceeding be reopened, and Ms. Almy subsequently was reappointed as Chapter 7 trustee for the Estate (*see* <u>Doc. 123</u>).  C&M continued to represent the Trustee under the Employment Order.

9.      On July 28, 2020, the Trustee, on behalf of the Debtor, joined the Action as one of two plaintiffs.[1]  On that same date, C&M drafted and filed the Trustee's *Application for Entry of an Order Authorizing the Employment and Retention of Special Litigation Counsel* (*see* <u>Doc. 126</u>), seeking to have the Trustee represented by, in addition to C&M, Special Litigation Counsel in the Action, which the Court approved (*see* <u>Doc. 128</u>).

10.      In connection with the Trustee's joinder as a plaintiff in the Action, she reached an agreement with co-plaintiff Sens, Inc. to allocate the proceeds of any recovery, which was memorialized in that certain *Agreement* dated July 23, 2020 ("<u>Allocation Agreement</u>").  On August 3, 2020, C&M drafted and filed the Trustee's *Motion Seeking Approval of the Allocation Agreement* (*see* <u>Doc. 127</u>), to which a contingent objection was filed by United States Surety Company and U.S. Specialty Insurance Company (collectively, "<u>Sureties</u>") (*see* <u>Doc. 129</u>).  The Sureties had filed a proof of claim asserting a secured claim in connection with providing a Performance Bond and a Labor and Material Payment Bond for the Project ("<u>Sureties' Secured Claim</u>").  The Sureties' contingent objection requested that approval of the Allocation Agreement not affect, waive or alter their rights in the Sureties' Secured Claim.

---

[1] A non-bankrupt entity, Sens, Inc., was the other plaintiff in the Action, also represented by Special Litigation Counsel.

11.     After a hearing, this Court entered that certain *Consent Order Approving Allocation Agreement with Sens Parties* (*see* Doc. 134), which, among other things, approved the Allocation Agreement.

12.     Since its retention during the Second Application Period, C&M has vigorously represented Ms. Almy, along with Special Litigation Counsel, in prosecuting the Action to recover and liquidate assets of the Estate.  After five years of complex litigation, the parties eventually settled the Action for a total payment by the Defendants of $2 million, with $1 million to be paid to the Trustee under the Allocation Agreement.

### III.     PROFESSIONAL SERVICES RENDERED DURING SECOND APPLICATION PERIOD

13.     During the Second Application Period, C&M has rendered professional services to the Trustee in connection with the Action.  These services are explained in further detail below. In addition, attached hereto as Exhibit A are the time entries of C&M's professionals memorializing their services during the Second Application Period.

### A.     *Professional Services:*

14.     As reflected in C&M's billing statements (Exhibit A), C&M's work for the Trustee related to the prosecution and ultimate settlement of the Action.

15.     C&M, on behalf of the Trustee, and with Special Litigation Counsel, litigated the Action through extensive discovery, including documents requests, interrogatories, and several depositions of fact and expert witnesses.

16.     C&M also spent significant time working with Special Litigation Counsel to prepare for trial, including participation in a court-ordered mediation.  After many hours of mediation over multiple days, C&M and Special Litigation Counsel negotiated a settlement with the Defendants for the total payment of $2,000,000.00, which payment was to be split as follows:

4

One Million Dollars ($1,000,000) to Monique Almy, as the Chapter 7 Trustee, and One Million Dollars ($1,000,000) to Sens, Inc., the other plaintiff in the Action and not in bankruptcy.  C&M prepared and filed the Trustee's *Motion for Approval and Compromise* of the settlement, with affidavit in support, proposed order and notice thereof (*see* Doc. 149), which the Court approved on August 1, 2025 (*see* Doc. 151).

**B.**    **_Professionals Providing Services:_**

17.    The name and position of each C&M professional who worked on this case during the Second Application Period are set forth below, along with a summary of the hours spent by each such professional, his or her hourly rate, and the resulting fees.  Detailed narratives of the services provided are in C&M's billing statement attached hereto as Exhibit A.

| Name | Position | Hours | Rate[2] | Fees Earned |
|---|---|---|---|---|
| M. Almy | Partner | 115.6 | $695 | $80,342.00[3] |
| R. Hagen | Counsel | 188.4 | $480 | $90,432.00 |

**C.**    **_Disbursements Made:_**

18.    The disbursements made by C&M during the Second Application Period are as follows:

| CATEGORY | EXPENSES -- <br> _SECOND APPLICATION PERIOD_ |
|---|---|
| Duplicating | $539.40 |
| **TOTAL** | **$539.40** |

---

[2] These hourly rates were held at prior levels; currents rates for Ms. Almy and Mr. Hagen are $1,055 and $725, respectively.  Applying the older rates allowed for a significant discount.

[3] The time value of Ms. Almy's legal services does <u>not</u> include the time she has expended solely as the Trustee during the Second Application Period.

52128725.1

An itemized listing of the foregoing disbursements during the Second Application Period is provided in C&M's billing statement attached as <u>Exhibit A</u>.

## IV.    <u>ANALYSIS</u>

19.    Under § 330(a)(1) of the Bankruptcy Code, the Court may award reasonable compensation for actual, necessary services rendered by attorneys and paraprofessionals employed by such attorneys based on the nature, extent and value of the services rendered, time spent on such services and the cost of comparable services other than in a bankruptcy case.

20.    Courts look to the "lodestar" formula in assessing attorneys' fees.  Under this approach, courts consider the number of hours of service reasonably devoted to the case multiplied by the attorneys' reasonable rates.  This sum may be adjusted to reflect the characteristics of the particular case and the reputation of the attorney.  *See, e.g., Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354, 361 (D.D.C. 1983), *aff'd in part, rev'd in part*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985).

21.    Many courts frequently consider the specific lodestar factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and applied to bankruptcy cases in *In re First Colonial Corp. of America*, 544 F.2d 1291, 1298-99 (5th Cir.), *cert. denied*, 431 U.S. 904 (1977).  These tests were later adopted by the Fourth Circuit in *Barber v. Kimbrells, Inc.*, 577 F.2d 216, 226 (4th Cir.), *cert. denied*, 439 U.S. 934 (1978), and in *Anderson v. Morris*, 658 F.2d 246, 249 (4th Cir. 1981), where the Fourth Circuit directed the lower district court to consider the lodestar approach utilized in *Johnson*.

22.    In *Harman v. Levin*, 772 F.2d 1150 (4th Cir. 1985), the Fourth Circuit applied the twelve *Johnson* factors in determining an award of attorneys' fees.  Following *Harman*, the

Applicant sets forth each of the *Johnson* guidelines in connection with the allowance of compensation sought herein:

        a.      <u>Time and Labor Expended:</u>

Applicant has rendered services to the Estate at the request of the Trustee.  Those services are described in Section III above and in the billing records attached as <u>Exhibit A</u>.

        b.      <u>Novelty and Difficulty of Questions Raised:</u>

The legal malpractice claims at issue presented novel and complex questions of law and fact, particularly because they arose from legal advice provided in the context of a sophisticated commercial construction project involving the development of a hotel.  The matter required a nuanced understanding of construction law, bonding of construction projects, and the interplay between professional duties and industry-specific contractual obligations.  The claims involved evaluating the standard of care applicable to legal counsel advising on construction specific issues – alleged defaults, liquidated damages, a surety claim -- areas that are highly specialized and fact-intensive.  Additionally, the case raised difficult causation and damages issues, including the extent to which the alleged legal malpractice caused financial damages.  These challenges were compounded by the need to analyze and present expert testimony on the legal standard of care and complex damage issues.  The complexity of these issues demanded significant legal skill and judgment, justifying the time and resources expended in pursuing the claims.

        c.      <u>Level of Skill Required:</u>

Applicant used the skills of attorneys at appropriate levels to ensure that the Trustee's and unsecured creditors' interests were protected.  Moreover, the prosecution of the legal malpractice claims demanded a high degree of legal skill, experience, and strategic judgment.  The underlying matter involved complex issues of professional negligence arising from legal advice provided in

the context of a commercial hotel construction project -- an area that intersects multiple sophisticated legal disciplines, including construction law, surety law, contract law, and professional responsibility. Counsel were required to assess and litigate nuanced questions regarding the standard of care applicable to attorneys advising on construction-related legal matters, including liquidated damages, a bond claim, and risks under a modified AIA contract. This necessitated not only a strong understanding of the substantive law but also the ability to work effectively with experts to establish a breach in the standard of care, causation and damages -- elements that can be difficult to prove in malpractice actions. Moreover, the case involved navigating procedural complexities within the bankruptcy context, including coordination with the Trustee and ensuring that the interests of the Estate and its unsecured creditors were properly considered.

      d.    <u>Opportunity Costs:</u>

Opportunity costs were not a consideration.

      e.    <u>Customary Fee:</u>

The hourly rates for the individual professionals of Applicant working on this case are the normal and customary rates charged by Applicant for its services to clients in other bankruptcy cases and to clients in non-bankruptcy matters in the Baltimore area. The hourly rates are within the customary range charged by other attorneys in the Baltimore area, and the total compensation sought is reasonable compared with fees charged by similarly situated law firms in cases of this magnitude and complexity. In addition, Applicant has exercised its billing discretion by charging older hourly rates instead of current rates (the current rates for Ms. Almy and Mr. Hagen are $1,055 and $725, respectively), allowing for a significant discount to the Estate.

f.    <u>Whether Fee is Fixed or Contingent:</u>

At the initiation of this case, Applicant hoped to be (i) adequately compensated for services rendered, and (ii) reimbursed for all out-of-pocket expenses approved under the Compensation Guidelines that it made on behalf of the Trustee.

g.    <u>Time Limitation Imposed by the Circumstances:</u>

This is not a factor in this case.

h.    <u>Amount in Controversy and Results Obtained:</u>

With Applicant's assistance, the Trustee liquidated the Debtor's malpractice claims in the Action.  The results obtained were the best possible results in a reasonable period of time.  As detailed above, the Trustee, with Applicant's and Special Litigation Counsel's representation, recovered the gross amount of <u>$2 million</u>, with <u>$1 million</u> being paid to the Trustee on behalf of the Estate.

i.    <u>Experience, Reputation and Ability of Counsel:</u>

Applicant believes that its attorneys are highly qualified in the field in which they practice and command the fees which they charge.  To that end, Applicant's practice is largely based on bankruptcy proceedings and complex bankruptcy litigation, such as here.

j.    <u>The Undesirability of the Case:</u>

This case is not undesirable in relation to other trustee representations.

k.    <u>Professional Relationship with the Client:</u>

Monique D. Almy is a partner with Applicant, and Randall L. Hagen is a counsel with Applicant.  Applicant represents the Trustee in other trustee matters.

l.    <u>Awards in Similar Cases:</u>

The fees requested by Applicant are comparable to or lower than fees allowed in cases of similar size and complexity, based on the time expended, the customary hourly rates and the difficulty of the representation.  Applicant has made a concerted effort to centralize responsibility for this case and to assign discrete responsibilities to attorneys in an economic and efficient manner.

23.    All legal services for which compensation is requested in this Second Application were performed for and on behalf of the Trustee and not on behalf of any other person.

24.    No agreement or understanding exists between Applicant and any other person for the sharing of compensation to be received by it for services rendered in connection with this case, except with C&M.  No agreement or understanding exists between Applicant and any other person rendering services in connection with this case for the sharing of compensation of such other person.

25.    This Second Application was submitted to the United States Trustee for review in advance of filing.

26.    The Chapter 7 Trustee has also reviewed the fees requested in this Second Application and finds them to be acceptable.

27.    Notice of this Second Application has been given to the United States Trustee, and all parties in interest who are listed on the matrix and who have entered their appearance in this case.

52128725.1

WHEREFORE, Crowell & Moring LLP respectfully requests the following relief:

A.      That Crowell & Moring LLP be awarded final compensation and reimbursement of expenses in the amount of $171,313.40, representing the total amount of fees and disbursements sought in this Second Application;

B.      That the Trustee be authorized to pay to Crowell & Moring LLP the sum of $171,313.40, representing the total amount of fees and disbursements sought in this Second Application; and

C.      That Crowell & Moring LLP be granted such other and further relief as is just and appropriate.

Respectfully submitted,

*/s/ Randall L. Hagen*
Monique D. Almy (Bar No. 04479)
Randall L. Hagen (Bar No. 08099)
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW, 10th Floor
Washington, DC 20004-2595
(202) 624-2712 (telephone)
(202) 628-5116 (facsimile)
*Counsel for Chapter 7 Trustee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 19, 2025, I reviewed the Court's CM/ECF system and it reports that an electronic copy of the foregoing *Second and Final Application of Crowell & Moring LLP, as Counsel to Chapter 7 Trustee, Seeking Allowance of Compensation and Reimbursement of Expenses*, together with exhibit and proposed Order, will be served electronically by the Court's CM/ECF system on the following:

Monique D. Almy
Aaron L. Casagrande
Michael E. Crowson
Augustus T. Curtis
Alan M. Grochal
Michael J. Klima
Eric G. Korphage
Marissa K. Lilja
Patrick Michael Pike
Daniel M. Press
David Sommer
U.S. Trustee – Baltimore
Gerard R. Vetter

52128725.1

I HEREBY FURTHER CERTIFY that on November 19, 2025, a copy of the foregoing *Second and Final Application of Crowell & Moring LLP, as Counsel to Chapter 7 Trustee, Seeking Allowance of Compensation and Reimbursement of Expenses*, together with exhibit and proposed Order, was served via U.S. First Class mail, postage prepaid, on:

> Sens Mechanical, Inc.
> 10135 Pin Oak Drive
> Berlin, MD  21811
>
> Ford Motor Credit Company, LLC
> c/o AIS Portfolio Services, LLC
> 4515 N. Santa Fe Ave. Dept. APS
> Oklahoma City, OK 73118
>
> */s/ Randall L. Hagen*
> Randall L. Hagen

12

52128725.1